**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

**UNITED STATES OF AMERICA**

**v.**

**DAVID M. LONG,**

**Defendant.**

</td><td>

**Crim. Action No. 10-171-1 (JDB)**

</td></tr>
</table>

**MEMORANDUM OPINION & ORDER**

In September 2020, defendant David M. Long moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A) in light of the threat posed by the COVID-19 pandemic given his preexisting medical conditions.  See Mot. for Compassionate Release Pursuant to 18 U.S.C. § 3582(c) ("Release Mot.") [ECF No. 347] at 1.  This Court denied his motion, concluding that "even if Long's health conditions did constitute an 'extraordinary and compelling reason' for release, he continues to pose a danger to the community," and thus "his release would be inconsistent with applicable Sentencing Commission policy statements."  Order (Sept. 25, 2020) [ECF No. 353] at 2.  Specifically, the Court referenced the Sentencing Commission's policy statement that a defendant shall not be released if he poses "a danger to the safety of any other person or to the community."  Id. (quoting U.S. Sent'g Guidelines Manual § 1B1.13).  The D.C. Circuit vacated this Court's order denying Long's motion on the ground that "[the Sentencing Commission's] policy statement is not applicable to compassionate release motions filed by defendants," and remanded the case for reconsideration applying the correct legal standard.  United States v. Long, 997 F.3d 342, 347 (D.C. Cir. 2021).  Even setting aside the Sentencing Commission's policy statement, however, the Court will once again deny Long's motion because his release would be inconsistent with the statutory sentencing factors that must be considered.

1

Under the First Step Act of 2018, a court may, upon motion of a defendant, reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," the court concludes that "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  "As the moving party, the defendant bears the burden of establishing that he is eligible for a sentence reduction under § 3582(c)(1)(A)."  United States v. Demirtas, Crim. A. No. 11-356 (RDM), 2020 WL 3489475, at *1 (D.D.C. June 25, 2020).  And a court may consider a defendant's motion for such a reduction only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring [such] a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).  But the Court is statutorily obligated under § 3582(c)(1)(A) to consider the applicable § 3553(a) factors in its assessment.

The bulk of the Court's analysis on remand will focus on the § 3553(a) sentencing factors, once again assuming arguendo that Long's medical conditions alone might otherwise support finding an "extraordinary and compelling" reason to release him.[1]  Indeed, the parties' dispute over whether Long's medical conditions and concomitant risk of serious health consequences if infected with COVID-19 is now largely outdated, given the evolution of the global pandemic since briefing was completed in September 2020.  At Springfield Medical Center Federal Penitentiary ("MCFP Springfield") where Long is incarcerated, the Bureau of Prisons reports only two active confirmed cases of COVID-19,  both among staff.  See COVID-19 Cases, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Aug. 24, 2021).  Meanwhile, 691 of the

---

[1] As explained in this Court's initial order denying Long's motion, the parties do not dispute that Long has satisfied the statutory exhaustion requirement, and the Court need not revisit exhaustion here.  See Order (Sept. 25, 2020) at 2.

facility's 873 inmates and 382 staff members have now been fully vaccinated, and 338 inmates and 264 staff members have recovered from COVID-19.  Id.; see also MCPF Springfield, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/spg/ (last visited Aug. 24, 2021). Nevertheless, the Court cannot ignore the fact that MCPF Springfield recorded the highest number of COVID-19 fatalities among its inmate population in the entire Bureau of Prisons with twenty deaths.        See        COVID-19        Cases,        Fed.        Bureau        of        Prisons, https://www.bop.gov/coronavirus/index.jsp (last visited Aug. 24, 2021).  And given the current uncertainty around new and emerging variants of the virus—even among vaccinated individuals— the Court does not discount the possibility that Long remains at risk of serious complications if infected.  See Meredith Wadman, A Grim Warning From Israel: Vaccination Blunts, But Does Not Defeat Delta, Science (Aug. 16, 2021), https://www.sciencemag.org/news/2021/08/grim-warning-israel-vaccination-blunts-does-not-defeat-delta.  But ultimately the Court need not reach the question of Long's medical vulnerability because the § 3553(a) factors provide ample reason to deny Long's motion and far outweigh any basis for release his heightened COVID-19-related risks might pose.  Hence, the Court will avoid the expenditure of additional judicial resources and delay that further briefing on this question would involve and turn directly to the § 3553(a) analysis.

The first factor for the Court to consider under § 3553(a) is "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  This factor weighs substantially against release.  Long's instant offense, to which he pleaded guilty in May 2012, encapsulates a decades-long RICO conspiracy in violation of 18 U.S.C. § 1962(d) to distribute large amounts of cocaine and heroin and to eliminate those who stood in the way of that operation.  See Plea Agreement [ECF No. 156]; Presentence Investigation Report ("PSR") [ECF

No. 214] ¶¶ 20, 24, 33.  For instance, in 1990, Long and others kidnapped, ransomed, and murdered an apparent rival drug dealer named Anthony Morrisey.  PSR ¶¶ 21–23; Mem. Op. & Order (Feb. 8, 2012) [ECF No. 112] at 2.  In 2007, Long paid accomplices to murder three other men.  Id. ¶¶ 30, 33.  One of those men, Franklin Moyler, died; another, Melvin Terrell, was seriously injured; and the third, Oakley Majors, suffered a gunshot wound to the leg but no permanent injuries.  Id. ¶¶ 28, 34.  "Terrell was paralyzed and lost his ability to speak.  He has since had an arm amputated, undergone a lobotomy, and gone blind in one eye."  Long, 997 F.3d at 349.  All the while, Long and others were distributing large amounts of narcotics in the community, including at least fifteen kilograms of heroin.  PSR ¶¶ 4, 27.

Long's criminal conduct continued well into his adulthood and thus cannot be attributed to youth or peer pressure.  Indeed, Long had at least one opportunity to abandon his illicit pursuits after the Morrisey murder in the early 1990s: he was arrested and charged for the murder, but the charges against him were ultimately dismissed due to prosecutorial delay.  See Mem. Op. & Order (Feb. 8, 2012) at 2.  Instead, he only deepened and intensified his criminal behavior, culminating in his attempt to orchestrate three more killings in 2007.  Long continued leading the drug conspiracy at least until November 2008 and apparently distributing narcotics "until his arrest in this case" in June 2010.  See PSR at 1, ¶¶ 4, 24.

To be sure, Long has put forward some information that weighs marginally in his favor on this factor.  He "maintains a very close relationship with his mother, children and grandchild," most of whom live in Washington, D.C., and "he accepted responsibility for his criminal behavior."  Release Mot. at 5–6.  Further, Long "has not received a single institutional infraction or write-up during his period of incarceration" and has completed several educational courses while in prison.  Id. at 8–9.  And finally, Long suffers from several medical conditions and is

4

wheelchair-bound as a double-amputee.  See Order (Sept. 25, 2020) at 1, 4,  But Long's health issues cannot seriously weigh in his favor on this factor because he "was already confined to a wheelchair in 2007 [and] was nonetheless able to pay hitmen in an attempt to have three people murdered."  Id. at 4 (citing Gov't's Opp'n to Def.'s Mot. for Compassionate Release ("Gov't's Opp'n") [ECF No. 349] at 12).  As much as this Court "commends Long on [his] achievements, they do not outweigh the serious criminal conduct for which he was convicted and sentenced."  Order (Sept. 25, 2020) at 3 (citing United States v. Gordon, Case No. 92-81127, 2020 WL 4788023, at *4 (E.D. Mich. Aug. 18, 2020)).  Even if Long's family ties and compliant prison record count in his favor, the nature and circumstances of the offense, viewed in the context of Long's criminal history and characteristics, weigh against his release.

Next, the Court considers:

> the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2).  Long was sentenced to a term of imprisonment of 348 months—29 years—and is projected to be released in August 2033.  See Gov't's Opp'n at 1.  He has served approximately 153 months, or roughly 44 percent, of his total sentence.  See id. at 1, 6.  Reducing his sentence by more than half now would undermine at least two of the sentencing objectives identified in § 3553(a)(2), so this factor also weighs against release.[2]

---

[2] The need for the sentence to deter criminal conduct or provide needed educational or vocational training does not carry much weight here.  Long has already served a substantial period of incarceration, so any impact a

First and foremost, as discussed above, the offense for which Long was convicted is extremely serious and warrants a lengthy sentence.  Prior to pleading guilty, Long faced "multiple life sentences if he were convicted on all counts" against him.  Gov't's Opp'n at 1.  And indeed, the applicable guidelines range for the lone count to which Long ultimately pled guilty—another § 3553(a) factor for the Court to consider, <u>see</u> 18 U.S.C. § 3553(a)(4)—was life imprisonment. <u>See Long</u>, 997 F.3d at 349.  All this suggests that a reduced sentence of 153 months would undervalue the gravity of Long's offenses reflected in his current sentence.  Other courts evaluating compassionate release motions from similarly situated defendants have likewise denied release. <u>See, e.g.</u>, <u>United States v. Robinson</u>, Crim. A. No. 04-128 (RDM), 2021 WL 1318027, at *1 (D.D.C. Apr. 8, 2021) (denying release motion of defendant who had served almost 16 years of 25-year sentence for RICO conspiracy involving drug-dealing and murder);  <u>United States v. Dorsey</u>, Crim. A. No. 04-128-21 (ESH), 2020 WL 4432248, at *1, 3–4 (D.D.C. July 31, 2020) (denying release motion of defendant who had served over seventeen years of a twenty-five-year sentence for RICO conspiracy involving large-scale drug distribution and murder despite defendant's underlying medical conditions putting him at risk of COVID-19); <u>United States v. DeSciscio</u>, Crim. A. No. 88-cr-00239, 2020 WL 3893711, at *4, 7 (D.N.J. July 10, 2020) (denying release motion of defendant who had served almost 32 years of his 75-year sentence for, <u>inter alia</u>, conspiracy to commit murder).  Hence, dramatically shortening Long's sentence now would also risk creating an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct."  <u>See</u> 18 U.S.C. § 3553(a)(6).

By the same token, as stated in its initial denial order, the Court has determined from the record that further incarceration is necessary to protect the public from additional crimes by Long.

---

sentence reduction would have on the deterrent effect of his sentence would be speculative at best.  The Court is not aware of and the parties have not addressed any needed training that would be undermined by Long's release.

Order (Sept. 25, 2020) at 4 ("[T]he seriousness of Long's criminal history and conduct in the instant case demonstrate that he continues to pose a risk to the safety of the community.").  Long has already hired hitmen to exact revenge on those perceived to have wronged him, so the government's concern "that [Long] would take action against the persons he knows cooperated against him if he were to be released" is not unfounded.  See Gov't's Opp'n at 12.  Indeed, although he has been incarcerated for a lengthy period already, the Bureau of Prisons has concluded that Long still poses a high risk of recidivism.  See Ex. 1, Gov't's Opp'n [ECF No. 349-2] at 1.  And although Long has avoided any infractions while incarcerated, he has not submitted anything like the "compelling evidence of . . . rehabilitation" that courts including this one have considered in shortening long sentences for serious offenses.  See United States v. Douglas, Crim. A. No. 10-171-4 (JDB), 2021 WL 214563, at *7 (D.D.C. Jan. 21, 2021) (collecting cases).  Indeed, of the programs Long has completed while incarcerated, only a few—the "victim impact panel," "drug education," and possibly the "healthy living class"—appear geared toward rehabilitation.  See Ex. 2, Release Mot. [ECF No. 347-1] at 2.  Similarly, Long gives the Court little to evaluate with respect to his current stability, development, and character, merely "reiterat[ing] the 6 letters of reference that he attached to his Memorandum in Aid of Sentencing" more than a decade ago, without a single letter reflecting the man he is today.  See Release Mot. at 2.

Long's circumstances thus differ sharply from his co-defendant, Reginald Douglas, whom this Court ordered released in January 2021.  Douglas submitted evidence that he "completed thousands of . . . hours of educational, vocational, and therapeutic programming, much of which has focused on taking responsibility for his past actions and developing skills in nonviolent conflict resolution."  Douglas, 2021 WL 214563, at *8.  Douglas also provided voluminous, current letters from family members, other inmates, prison staff, and prospective employers.  Id. at *8–9.  And

7

finally, Douglas was deemed to pose a low risk of recidivism by BOP.  Id. at *8.  Should Long move for compassionate release again in the future, he would do well to accumulate and present a more robust record than what he has put forward in connection with his motion here.

On the evidence currently before this Court, then, the § 3553(a) factors weigh so heavily against Long's release as to overcome whatever extraordinary and compelling circumstances his medical conditions may otherwise present in light of the COVID-19 pandemic.  Lopping off more than half of a sentence (which already—by plea agreement—represented a substantial downward departure from the applicable guidelines range), in the absence of any compelling evidence of rehabilitation, would undermine the seriousness of Long's offenses and criminal history and would pose an unacceptable risk to the safety of the community.  As a result, the Court must deny his motion because the reduction sought here would not be consistent with the applicable factors under 18 U.S.C. § 3553(a).

\*       \*       \*

For the foregoing reasons, it is hereby **ORDERED** that [347] Long's motion for compassionate release is **DENIED**.

**SO ORDERED.**

/s/

JOHN D. BATES
United States District Judge

Dated: August 25, 2021

8